The next case is SSL Services v. Citrix Systems, 2013-14-19 and 14-20. Mr. Garr. Thank you, Judge Lurie. I may have leased the court. This case involves a cross appeal from a jury verdict involving two related patents claiming pioneering improvements to virtual private network or VPN technology. The jury found that Citrix infringed the 011 patent and Citrix has provided no reason for this court to overturn that finding, especially given the owner's standard of review it must surmount. But the jury never had a fair opportunity to consider the 796 patent because the district court's claim constructions fundamentally compromised the case that SSL was allowed to present to the jury. Let me understand exactly what you're arguing as it relates to the general verdict rule. Yes, I understand what that concept means, but that presupposes that to the extent that we would affirm any of the limitations, you would have a good faith ability to argue below that those limitations are satisfied. That's right. Obviously, our central position is that the district court erred with respect to each of the three limitations, but if the court found that it misconstrued one term, then our position is under the general verdict rule, which this court recognized. For example, in the Teleflex case, the court would have to send it back for a new trial because it's possible that the jury found that SSL satisfied the two other limitations, two other terms, even as construed by the district court. Let me give you an example. Suppose we believe that a shim is absolutely required by these claims. Is there any good faith basis for you to argue that you would even survive summary judgment on that issue? Oh, absolutely, Your Honor, and we did survive summary judgment. Citrix moved for summary judgment. They also moved for directed verdict. They got neither, and on the shim, for example, Dr. Kelly, our expert, put in substantial evidence that the WINSOC in the products, the accused products, actually performed as a shim and would have met that limitation. The jury, we think, could have found that that limitation was met, and importantly, there's no reason, no basis for this court to find that the jury could not have found. I mean, really, I think what their position is asking this court to do is to invade the province of the jury because we have a general finding of non-infringement, but it's nevertheless quite possible that the jury agreed with us on two of the three terms but simply disagreed with the third. And if this court were to set aside one of those terms, then I think you have to send it back because the standard under the Teleflex case is this court has to be able to conclude that the jury necessarily would have reached the same result. And the jury, the court can't do that unless it were to find that there was no possible evidence on which the jury could have found that. And again, looking at the evidence here, there was substantial testimony. The whole case was tried on the district court's claim terms, and there was substantial evidence from which the jury could have found that. No, it might not have. We don't know. That's a problem with the general verdict rule. And that's why— Let me shift your focus and ask you the same question with respect to the destination address limitation. Sure. If we agree with the district court on that claim construction, then is there any question at all that the accused structures do not have that address? Yes, absolutely. And again, Dr. Kelly explained in detail during the trial why the machine keys and the session ID keys operated as destination addresses under the district court's claim construction. The machine keys actually identified the second computer. The district court found—this is on page 34 of the addendum to the blue brief—that the second computer was the destination address. And it's the machine key that actually tells you not only what the second computer is, what you're trying to connect with, but how to find that. And that's a destination address. Now, we think the district court's interpretation of that was wrong. The claim says destination address. It doesn't say network address. So that literally—the term is wrong. And the district court— But if we agree with the district court that destination address is a network address, your argument is that there's still an argument that that possibly could be met here? Absolutely, Your Honor. And again, Citrix made an argument before trial in summary judgment that it would have to win necessarily under the district court's claim construction. The district court denied summary judgment and also refused to grant a directed verdict to Citrix, I think recognizing that there was evidence from which the jury could have found that that limitation was met, even as construed by the district court. And there was overwhelming evidence presented by Dr. Kelly, our expert, that the destination address limitation was met. Now, the other claim term or other claim component that we've challenged is the district court's step order requirement. As I understand Citrix's position in this court, it acknowledges that the claim does not impose the rigid step order that the district court found. Indeed, it argues that the order has to be different, and this is on page 51 of the red brief, where it argues that the server must communicate with the second computer before the session key is generated. Now, I think that that rigid step order requirement is problematic, both because the court's general rules, you don't impose a rigid step order unless the claim absolutely requires it, and the claim does not absolutely require it. And this was clearly prejudicial. For example, during the trial, one of the demonstratives that Citrix's expert put forward was a baseball diamond. And on that demonstrative, it showed that under the district court's rigid claim order requirement, you had to run the bases. You had to go to first, to second, to third, and then home. Whereas the expert argued that SSL's position was that the runner could go from home base to second base or then to third base and all around. Now, you can imagine that that demonstrative in a complex patent case like this might resonate with the jury. And I think if the court agrees that the step order requirement was erroneous, then I think that that tees up perfectly the general verdict rule. It's possible that the jury found for SSL on both destination address and intercepting under the district court's claim construction, but nevertheless found that the step order- Do we have to find all of the steps? But that only relates to a couple of the products, though, right? It does not relate to the meeting night, the go-to meeting. But it does relate to go-to computer and go-to assist. But even if we found that perhaps the step order was a little too rigid, if there's any one of the steps that we think was accurately described and that there's no evidence that that step is correct- Right. And I think if you could find that there was no evidence, but I don't think you could fairly find that because, again, Dr. Kelly, our expert, testified that we did meet the step order requirement, each of the steps, at least under the doctrine of equivalence. So I think if the court agrees that the step order itself wasn't imposed, then you would have to find that that term is erroneous. I think you'd have to find prejudice. Again, thinking of that baseball diamond demonstrative, which was shown to the jury, you'd have to find prejudice. And then the only question is the application of the general verdict rule. Now, on intercepting, I think that there are two problems with the district court's claim construction. One is the importation of the SHM requirement, which is not found in the claim language. But the other is the importation of the diverting requirement. The claim says intercepting. It notably does not say diverting, even though other claims do. And I think if you look at the figure three in the patent, which is on page 104 of the addendum to the blue brief, you can see that on the numbered arrows 40 and 41, if you go into the discussion of those arrows in the specification, which is on page 113, lines 47 to 56, what you'll find is the arrow 40, number 40, which goes from the peer-to-peer applications box down to the SHM, that's defined as intercepting, which the specification says hooking or intercepting, which is perfectly consistent with SSL's interpretation of it, to be receiving from one software module that which concerns another. And it's that second dashed arrow that goes up, number 41, which is described in the specification on page 113 as diverting. And that makes crystal clear that intercepting is not diverting under the claim, and that's consistent with the claim terms itself. Again, if you go to a claim... If we were to conclude that the diverting is not required by the claim, but that the SHM is, doesn't that actually narrow the construction? Well, I don't think it would. I mean, then the question would be whether or not we've met the SHM requirement. But again, you get back to this problem that it's possible... Citrix argued the case, and its expert argued the case, that to meet the intercepting term, we had to show both diverting and SHM. So it's possible that the jury said they haven't shown diverting, even though they have shown that the WINSOC, which was our argument at trial through our expert, was actually met the SHM limitation. And so that's why I think if you conclude that the district court was wrong to import the diverting term into the intercepting term, the court would have to send it back for similar reasons in the general verdict rule.  You don't dispute that it's your burden to establish that there's prejudice from any of these? We do, Your Honor. And I don't think there's any question Citrix hasn't seriously argued that we weren't prejudiced if we were right under our claim constructions. Their central argument is that as long as this court can find that there's some evidence to support for the jury to reach a finding that the limitations were not met, then the court has to reject our motion. That's a JMOL standard. It's not a new trial standard. This court's new trial standard, and it's on Teleflex and Verizon, I'm quoting from page 1328 of Teleflex, the court can affirm only if there's substantial evidence supporting the verdict. That's what Citrix focuses on. But then it says, and if correction of the error in the claim construction would not have changed the result. And then if you look at Teleflex, it quotes cases where it says you have to conclude that the error would necessarily not have changed the result. And the court just can't do that on the record here because you have a general finding of non-infringement and it's perfectly possible that the jury could have found that two of the claim terms were met, that we had met our burden on that, but one of them was not under the district court's claim construction. We don't know which one that was. It could have found more helpfully to SSL. But I think that's why this case is teed up so nicely under the general verdict rule. And as far as I can tell, I think that the position that the general verdict rule wouldn't apply here would seem to come very close to an argument that this is a patent-specific rule. This court hasn't adopted that rule. It has applied the general verdict rule, and I think any notion that there has to be some kind of patent-specific rule in this context would be quite problematic under recent Supreme Court case law rejecting that kind of approach. Now, the other argument that we've made... Mr. Garrow, I don't want to intercept you or divert you. If you wanted to save five minutes, you can continue or save it. I'll reserve the remainder of my time, Your Honor. Thank you very much. Mr. Downs, you set a tall order. You raised five issues and then cross-appealed. Choose carefully. And you wanted to save three minutes for your cross-appeal, which can only be in the cross-appeal issues. And, of course, you don't now know whether there will be anything to respond to on the 011 patent. Having stated all the problems facing you, please proceed. Your Honor, I understand that I can't address everything in 15 minutes, so I'll try to get right to the point. First on the 796 patent. In this case, we have a thorough and well-reasoned opinion from Judge Ward, an experienced judge who's obviously done a lot of claim constructions before he retired. The jury verdict on those constructions was that we did not infringe the 796 patent. That verdict should be affirmed. I want to focus on destination address because I think it's key. Their construction of destination address as just being an identifier for a desired location is clearly wrong. Judge Ward's construction is clearly correct. The claims talk specifically and are limited to communications between computers on an open network. So we're inherently talking about computer network communications that, as a person of ordinary skill in the art in the patent would understand, are addressed. They have addresses. They communicate between computers by addressing data that travels between the computers. Let me ask you the same question I asked Mr. Garan. If we affirm that destination address means network address, is there any question of infringement that requires a new trial or does the general verdict rule nonetheless permit us to simply affirm the jury verdict? I submit that the general verdict rule does permit you, and in fact you should affirm the verdict here because if you look at the Verizon Services case, you didn't even address whether one of the claim constructions was wrong because there was substantial evidence in the record to support a non-infringement on the other claim constructions. Clearly here we have more than substantial evidence to support the verdict. We submit that no reasonable juror could find that a meeting ID and a session ID are a destination address as construed by the court, which if you affirm is a network address. You don't have to flip it around. We would have to conclude that there was no substantial evidence in the record that could support the contrary conclusion. I think that's correct. You can conclude that. I don't agree. I think if you find that no, let's say you remand it. The court's opinions say we don't remand if it's a waste of time. If the jury is going to reach the same verdict, we don't remand, right? And even when you see there's an error in construction, you look at the record to see whether it would be a waste of time to remand. You would basically apply the Jamal standard and say no reasonable jury could. Exactly, that's what I'm saying. Right, and so what I'm saying is on this record, on this trial record, no reasonable jury could conclude that the meeting ID, the session ID, or the machine name key are the network address of a computer or server. There is no evidence that would support that. Mr. Garr points to the fact that the judge at the end of the trial allowed the issue to go to the jury over our first an oral Jamal and then we submitted a written Jamal. But the judge never actually ruled on the written Jamal. He just allowed it to go to the jury, call it a pocket veto or whatever. But we have no analysis from him of the evidence in the trial. The evidence in the trial is in our briefs and it recites how, in fact, we operate fundamentally differently from what's claimed. Our go-to products never know the actual destination address of the computer they're trying to talk to because we're always talking through an intermediary server. All we do is send messages to the server. We don't know that destination address of the second client computer. So no reasonable jury could find that. Their expert, Dr. Kelly, merely said, oh, it identifies, the machine name key identifies the computer. He never said it is, in fact, a network address. And it is not. I submit the record is very clear on that. From that it flows that if there is no destination address, if they can't win on destination address, they can't win on the phrase, quote, intercepting a destination address, regardless of how you interpret the word intercepting. I agree that a shim is required. I submit that Judge Ward was correct in synonymizing, intercepting or diverting. So those things should be affirmed. But if the thing they accused of being a destination address is not a destination address, we can't infringe no matter how you do intercepting. And likewise, the step order becomes irrelevant because if you don't perform one of the steps, whether or not you have a step order, whether the judge was right or not, and we submit he was, we don't agree there was error, we don't admit there was error. That's a misconstruction of our brief. But whether or not, when one step is missing, you can't infringe a step order or the lack of a step order. You just don't infringe. So destination address we submit is the way through the, we don't have to go into a lengthy discussion of the general verdict rule. We have the facts, we have the correct claim construction, and we have a way to affirm the verdict. And it should be affirmed. Mr. Downs, it may be a minor issue, but why isn't SSL a prevailing party? They brought a lawsuit and they got a recovery. The fact that they didn't get it under both patents doesn't change the fact that they sued and won a verdict. So I think there's two separate issues, Your Honor, whether or not they should be a prevailing party or not and whether or not fees were awarded. There was a similar case, which we cite, in which the court said, well, maybe there should have been a prevailing party, but it was within the court's discretion to deny fees. And in that case, we really more or less argued that it's within the court's discretion to deny fees here, regardless of whether or not there should be a prevailing party because we actually won the bigger patent and they won the little one. But yes, they did get some relief. We also got relief, too. I don't know if that answers your question. So with respect to the intercepting... Oh, so with respect to the case law, I wanted to just point again to Verizon Services and the Ecolab case, where this court was clear that the burden is on them to prove that the verdict would be different on remand. They have to prove there wasn't harmless error. And you're saying that Dr. Kelly's testimony is not enough. It's not enough. And not only that, in their brief, they don't even try to argue that it's enough. That argument isn't in the brief. Their only argument for prejudice is to say, oh, well, the judge should have adopted our construction, and under our construction, we were prejudiced. They never say that we have met our burden under Ecolab of showing that the error is not harmless, and they don't try to do that in the brief. What about the shim? Do you think that his testimony regarding the windsock is enough to at least raise the question as to whether the jurors would have found the presence of a shim? No, I don't think so, Your Honor. Again, if this had been briefed, we would have gone into it, if they had tried to argue that. But a windsock itself is shown in the patent in Figure 2 as being part of the prior art. It's not a shim, and it didn't function as a shim in our devices because, as we say, we're fundamentally different. Since we're always designed to connect to the server and communicate only with the server, we never have to intercept anything. All of our data flows down the stack exactly as it's supposed to, without any intercepting, any diverting. It's designed to go to our server. It goes to our server. And so there is no basis for saying, under intercepting, in this record, which we explain our facts in detail in our introduction, there's no basis for finding that intercepting is satisfied, particularly if shim is confirmed, and also if intercepting or diverting is confirmed. But even under any meaning of intercepting, we don't do it. I can't remember how much time I have left, Your Honor. You have seven minutes, including the three you want to save for frustration. All right, so... Can I start with the willfulness issue? Yeah, so on willfulness, first of all, let me step back and say, we focus in our brief on two substantive defenses. One is encrypt files, and the other is obviousness. And we think we should get a JMOL on both of those. But regardless of whether that's the case, the issues were close enough, and the evidence was disputed between experts about that clearly our defenses were reasonable. Recently, Judge, you came out with a decision in April from a panel in which you did an analysis of the reasonableness of an obviousness decision. It's very similar to our case here, because we had experts testify that Takahashi discloses everything, that RFC 1508 discloses the mutual authentication. We point to it. You have the documents in front of you. You can look at them. You can see that from the specification of the patent, the applications layer is defined as being what's above the TDI layer, and that is what our expert applied. And our expert made a straightforward application of KSR, the combination of Takahashi and RFC 1508. Should we be reviewing the district court's determination with any deference? I don't think you should on the obviousness. First of all, the ultimate conclusion is it's a matter of law, and you can look at those references yourself and see what's in them. You can look at the patent itself and see where it's finding. That relates to the merits argument, but as it relates to willfulness, whether or not that is subjectively reasonable, is that something we should be deferring to the district court? No, that's absolutely de novo. And if you actually look at his opinion on the reasonableness... Should it still be de novo after the Supreme Court's recent decision in Hymer? Yes, I believe so, Your Honor. I don't know the answer to that question, but I believe it is still de novo, in that it is a question, reasonableness is posited as a question of law. What would a reasonable person have decided? The judge, in his opinion, never actually analyzed that issue, what is reasonable or not. He didn't look at our evidence, weigh it against their evidence. He didn't do the analysis that you have done in your opinions. So you're saying that the district court, instead of looking at whether you had a reasonable defense, looked at the fact that you presented a defense that failed. That's correct. And concluded from that that, therefore, your actions were willful. That's correct, on the objectively reasonableness. I will also just briefly touch on the subjective reasonableness. I do want to reserve some time, and I hope I can come back to these issues if I can. On the subjective reasonableness, there is a huge gap in the proof. The evidence of, quote, knowledge of the 011 patent was years before anyone at Citrix actually acquired or knew about the accused products. And there's a gap. Nobody at Citrix who was involved with the actual accused products was ever shown to have knowledge of these 011 patents. So Judge Gilstrap erred by applying an affirmative duty to investigate to us, which isn't the law after Seagate. I will reserve the rest of my time, Your Honor. Right, if there's something to rebut. We'll see what Mr. Garr has to say. He's got under four minutes. Thank you, Your Honors. A few points. One, in the 796 patent, we absolutely did argue prejudice as to each of the claim limitations. It's laid out in our brief. As to destination address in particular, Dr. Kelly explained why the machine key is a network address. Please look at pages 1268 to 73, where he explains why the destination address limitations is met as to go to my PC. A130204, where he explains why it's met as to go to meeting. And A1343, where he explains why it's met as to go to assist. There's a reason why Judge Gilstrap allowed this case to be tried and why he did not grant them directed verdict. And that's because he recognized that there was sufficient evidence for a jury to reach either conclusion. And there's no reason for this court to wait in there and no basis to find that there was no evidence for the jury to reach a contrary conclusion. No possible evidence as to our limitations. Second, as to prevailing party, Judge Lori, we think that you're absolutely right, that SSL clearly was a prevailing party. The district court's error was not to separate out the question of who is a prevailing party and then whether that party is entitled to cost. So on that... But sending it back doesn't necessarily get you anywhere because even if we say you're a prevailing party, you would still have the absolute discretion to say, but given the way everything's played out. Absolutely, and we'd like an opportunity to make that case to the judge on remand. Now, finally, as to willfulness. First, the district court absolutely did look at objective willfulness. Please look at the addendum to our blue brief, pages 95 to 97, where he analyzed the issues. Second, the district court properly concluded that this was not even a close call. There were two issues on this. First is whether we met the encrypt file limitation. The whole point of the communications here is to encrypt, and here we have substantial evidence from Dr. Kelly that there was encryption. There was also the diagrams, which Citrix did not even address, and that's on page 6 of the yellow brief. The net 6 VPN EX program, that's an encryption program. Did the district court apply the correct standard when it assessed objective reasonableness in looking at the obviousness defense? It did, Your Honor. It looked at whether there was an objective... I mean, obviously the district court wasn't persuaded. The defense didn't carry the day, but that's not the standard. That's not the issue. The issue is whether the defense was reasonable. You're right, Your Honor, but I think the district court absolutely did look at that in pages 95 to 97 of the blue brief addendum. It did apply the correct standard. The other defense that they mentioned as obviousness, Takahashi, look at figure 8 on page 63 of the red brief. That itself shows that the encryption is not performed at the applications level. There was no reason for them to think that this patent was invalid. The patent was valid when issued. It's been confirmed by the PTO under the more lenient preponderance standards. Now, finally, as to Highmark, Your Honor, I think you are absolutely right that Highmark does change the de novo standard, and the reason why I say that is if you look at this court's decision at Highmark, the majority in that case specifically relied on the Bard decision and the conclusion that objective reasonableness for willfulness is de novo review, and Judge Meyer's dissent in that case argued strenuously that Bard was wrong, that the objective reasonableness and willfulness was not de novo for many reasons, including the fact that reasonableness is a quintessential fact issue. The Supreme Court, we know, disagreed with the de novo review and held that it was a discretionary determination that would not be substitute de novo review. Let me ask you whether or not when you put Highmark together with Octane that there isn't some basis for us to reconsider the whole approach to willfulness and to address it as a totality of the circumstances analysis rather than requiring underlying willfulness determination. I think there is. I think that that would be consistent and I think all that would weigh towards giving effect to Judge Gilstrap's finding here after sitting through the whole trial considering the evidence that this wasn't even a close call. The last thing I would say is I don't think the Court needs to reach that issue here because we win even under the de novo standard because these offenses were clearly not valid offenses to a patent that was issued and presumed valid, but if the Court does feel that it needs to reach it then I think that Highmark does call upon the Court, require the Court to reconsider its analysis here and give discretion to the District Court's finding. Thank you Mr. Garr. Mr. Downs, since we let Mr. Garr run on a little bit we'll give you a total of five minutes on cross appeal. Thank you. Judge O'Malley, just going back to the Highmark issue and thinking about it after this comment, we agree that you don't need to reach it here and it's for several reasons. First of all, whether it's de novo or not on the reasonableness standard or on the standard of the objective reasonableness, Judge Gilstrap just simply applied the wrong analysis. It was over and over. You lost. Your defenses are unreasonable. There wasn't a balanced analysis of the evidence on both sides and he was also persuaded heavily by the fact that after the trial even though the Patent Office had rejected these claims for a while based on our art, after the trial they were rejected finally by the Patent Office. I mean, the claims survived. But also, the subjective willfulness fails in any way because of this huge gap between their proof. They had to prove by clearing convincing evidence that we were reckless but there was no evidence that anyone involved with the accused products actually knew of the patents or had any reason to investigate them until a lawsuit was after SSL acquired the patents. Now, with respect to the destination address, if I can rebut on that. That is not a cross appeal issue. Can I have two seconds on it, Your Honor? It's not a cross appeal issue. Annapelle doesn't have the final word on an appeal issue. Alright, so I will say in general with respect to the willfulness, we pointed out in our reply brief that there were many places where the record was not accurately reported in the briefs. And I urge the Court to look at the record citations that have been cited and confirm that they actually say what they say they say in their briefs. But with respect to encrypt files, here, this is a situation where the Court's construction as explained in detail by Judge Ward drew the distinction based on the claim language between encrypting packets and encrypting files. And they cobbled together, as part of their evidence, a document here where there's a little padlock that says encryption. Well, merely encrypting data is not encrypting files based on what the Court itself said the claim construction means. Our witnesses testified, Mr. Murta, who is the engineer on the product, that we encrypt at the packet level, not at the file level. And our witnesses testified that we do not meet the encrypt files limitation as construed by the Court. They had no testimony whatsoever from their expert, Dr. Kelly, on that point. Their evidence is all cobbled together. Again, look at the record. I encourage you. And it's cobbled together with things that do not address the encrypt file limitations as construed by the Court. Thank you, Mr. Jones. We'll take the case under advisement.